IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 24, 2019 Session

## STATE OF TENNESSEE v. ASHLEY DONIELLE WRIGHT

**Appeal from the Criminal Court for Knox County**
**No. 113037   G. Scott Green, Judge**

_____

### No. E2018-01402-CCA-R3-CD

_____

Defendant, Ashley Donielle Wright, entered guilty pleas to five counts of identity theft and one count of misdemeanor theft. Pursuant to the plea agreement, she was to receive an effective sentence of two years, with the manner of service to be determined by the trial court. After a hearing, the trial court denied judicial diversion and sentenced Defendant to serve forty-eight hours in confinement and the remainder of the agreed-upon sentence on supervised probation. Defendant appeals, asserting that the trial court erred in denying diversion and in ordering confinement. Because the record reflects that the trial court did not make necessary factual finding or indicate on the record the sentencing considerations that warranted imposition of the sentence, we reverse the judgments and remand for the trial court to make adequate factual findings, engage in the requisite legal analysis, and impose judgments in accordance with the mandated statutory and common law considerations and in conformity with the plea agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed;**
**Case Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ., joined.

Jonathan D. Cooper, Knoxville, Tennessee, for the appellant, Ashley Donielle Wright.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Willie Santana and William Bright, Assistant District Attorneys General, for the appellee, State of Tennessee.

OPINION

*Background*

Defendant committed the crimes at issue over a period of months against numerous victims who were her close friends and family members. At sentencing, Defendant sought to show that she was suffering from a mental health disorder at the time she committed the offenses. Numerous victims submitted victim impact statements and made statements to the court expressing their sense of betrayal and asking that Defendant be denied diversion, particularly noting that Defendant should not be eligible to continue with her profession as a middle school teacher.

Defendant, having waived her right to a grand jury, was charged by criminal information. *See* T.C.A. § 40-3-103. She entered into a plea agreement whereby she was to receive a sentence of two years for each identity theft conviction and a sentence of eleven months and twenty-nine days, "all suspended at 0%," for the misdemeanor theft conviction, with all of the sentences to be served concurrently. The plea agreement outlined that Defendant was to pay restitution prior to sentencing, that she was to continue mental health treatment as a condition of probation, and that she intended to apply for judicial diversion and probation. The agreement reflected that, regarding the request for diversion or probation, the State would "stand on [the] report."

At the plea hearing, the trial court reviewed the rights Defendant would be waiving in entering her guilty pleas and informed Defendant that the manner of service would be decided by the trial court at a later date. The State noted for the trial court that, as part of the agreement, "[t]he defendant will be making application for probation and judicial diversion and the State will stand on the recommendations of the report." The bulk of the offenses occurred between June 15, 2017, and August 4, 2017, although one count of identity theft, committed against Defendant's mother-in-law, occurred on or around February 2, 2017. The prosecutor stated that if the case had gone to trial, the State would have introduced evidence that Defendant applied for an online loan in Mr. Jeremy Swift's name, using his personal information without his permission, and that Defendant applied for a credit card in Ms. Ashley Swift's name, using her personal information without her permission. Defendant spent approximately $3,900 belonging to Mr. and Ms. Swift. Defendant applied for a credit card in Mr. Joshua Porter's name, using his personal information without his permission, and she subsequently made approximately $3,000 in charges on the card. Defendant used Ms. Tammy Wright's personal information to apply for a credit card on which she made numerous charges. Defendant made some payments on the card but owed approximately $1,515 when she stopped making payments. Defendant went to a training seminar with Ms. Christina Nuchols, offered to hold her purse, and charged approximately $557 in utilities to a debit

card in the purse. The misdemeanor theft was perpetrated against Ms. Manda Hipshire, and Defendant waived the reading of the factual basis of the misdemeanor charge. The trial court accepted the guilty pleas.

Each of the victims submitted a written victim impact statement. Mr. Swift, Defendant's brother-in-law, described Defendant's attempts to open credit cards in his name and stated she successfully obtained an online loan with his personal information. He noted that it took countless hours to sort out the financial issues that resulted. Defendant had never apologized. He asked for Defendant to be sentenced to confinement and for her teaching license to be revoked.

Ms. Swift, Defendant's sister-in-law, stated that Defendant had opened a credit card in her name and made numerous charges. She stated that Defendant had maintained extravagant spending habits since high school and had turned to stealing when she had exhausted a trust fund which her father left her. Ms. Swift's family was profoundly affected by the offenses; in particular, her brother was in the process of divorcing Defendant and Ms. Swift's children could not understand why they did not see their aunt. She noted that Defendant lied about her offenses when confronted and that Defendant never apologized. She further observed that Dr. Leonard Brabson, who had diagnosed Defendant with post-partum psychosis, was a friend of Defendant's parents. Ms. Swift asked the court to impose confinement and to prevent Defendant from teaching children.

Mr. Porter's statement described how Defendant, his family's neighbor, made unauthorized charges on his account. He stated that he had lost trust in people, that his older child had nightmares related to the theft, and that his younger child missed playing with Defendant's son. He noted that Defendant's theft could have affected his work at the Department of Energy because his security clearance required a reasonable credit score. He asked for the court to sentence Defendant to confinement.

Ms. Valerie Nadine Porter, Mr. Porter's wife, submitted a statement regarding how Defendant's use of her husband's personal information had affected her family. Ms. Porter described Defendant's elaborate attempts to elude detection by creating a story that Defendant's own credit information had been compromised and that a neighbor had witnessed someone stealing Defendant's mail. The Porters attempted to assist Defendant in finding the thief by keeping a watch on Defendant's mailbox, but they later discovered that Defendant lied about the neighbor witnessing mail theft. Defendant perpetrated the theft against the Porters by taking a photograph of Mr. Porter's credit card, which was in Ms. Porter's wallet. Ms. Porter described the $3,000 worth of charges as including "family beach portraits, gifts for friends and family, and makeup." Ms. Porter stated that Defendant had betrayed the family's trust and described the effect of the crime on her children. She noted that Defendant never apologized, never showed remorse, portrayed

herself as the victim, and blamed various individuals, including her sister and a neighbor. She asked the court to sentence Defendant to confinement and noted her concern that Defendant might continue to teach.

Ms. Tammy Wright, Defendant's mother-in-law, submitted a victim impact statement which detailed that in February of 2017, Ms. Wright was made aware of two unsuccessful attempts to open credit cards in her name. Defendant ultimately used Ms. Wright's name, birthday, and social security number to successfully open a credit card on which Defendant was also an authorized user. Defendant would have had to root through Ms. Wright's personal belongings to obtain her social security number. Because Defendant appeared shocked that her name was involved, Ms. Wright did not suspect her as the perpetrator until other acts of theft were uncovered in July. Ms. Wright wrote that she felt betrayed, that her family was torn apart, and that the crime affected her religious life. She noted that Defendant had never shown remorse, never offered an apology, and never asked forgiveness. Instead, when the offenses first came to light, Defendant blamed a neighbor, her half-sister, and her husband, who was Ms. Wright's son. Ms. Wright asserted that Defendant's parents were paying for the restitution and that Defendant had suffered no consequences. She asked the trial court to deny diversion.

Ms. Nuchols stated that Defendant stole her credit card information when she trusted Defendant with her purse while they were at a teacher training session. Defendant also purchased makeup from Ms. Nuchols using Mr. Porter's credit account. Ms. Nuchols stated that the incident affected her relationships with her colleagues, that she had to delay purchasing school supplies for her son, and that she still worried that Defendant would further offend against her family, because her social security card and her children's social security cards had been in her wallet when Defendant accessed her debit card. Ms. Nuchols noted that, during lunch breaks at school, she had seen Defendant purchase expensive clothing. She stated that Defendant had not shown remorse, had never apologized, and had stated on social media that her victims were unfairly judging her. Ms. Nuchols asked the court to sentence Defendant to some confinement and noted that if Defendant were allowed to continue teaching, she would have access to her students' personal identifying information.

Ms. Hipshire described Defendant's theft of cash from her purse. Ms. Hipshire and Defendant had gone to lunch, and Defendant had observed that Ms. Hipshire had a large amount of cash. Ms. Hipshire noticed at lunch that she was missing $200 and told Defendant the money was for her children's school supplies. Defendant stated that she, too, was missing money. Ms. Hipshire left her purse with the remaining cash in her classroom that afternoon and later discovered the rest of her cash was missing. Overall, $500 was taken. Ms. Hipshire reviewed a video with the assistant principal, and Defendant was the only person "who spent any amount of time" in Ms. Hipshire's

classroom.  Ms. Hipshire stated that Defendant had been one of her best friends.  After the theft, Ms. Hipshire felt she could no longer trust others.  She noted she had to leave work on one occasion because she could not stop crying.  Ms. Hipshire stated that she had known Defendant since 2012 and that she had discovered that many of the things Defendant had told her were lies.  She noted that Defendant spent thousands of dollars on clothes with stolen money.  Ms. Hipshire stated Defendant had shown no remorse and continued to refuse to take responsibility.  She asked the court to sentence Defendant to confinement and stated that Defendant would have access to students' social security numbers if allowed to teach.

At the hearing, Dr. Leonard Brabson, an obstetrician and gynecologist, testified that Defendant had been his patient since she had her first child in 2013.  On November 15, 2016, she gave birth to another child, and at a postpartum visit in December, he prescribed an antidepressant for her for postpartum depression.  He next saw Defendant on September 21, 2017, and immediately arranged for her admission on the psychiatric floor.  He stated that Defendant "just didn't seem to be in touch with reality at that point and it was alarming.  And occasionally this happens with some postpartum depression, and really a pretty high suicide rate when that happens so we usually try to get them admitted pretty quickly to the hospital."  He elaborated that Defendant "was making statements that just didn't make sense to me and — a little hard to explain other than that.  It was just that I would ask her a question and it was like she was in another world."  Defendant told Dr. Brabson that she was hearing voices.  The trial court asked if Defendant's condition would cause her to tell falsehoods and mislead or manipulate others, and Dr. Brabson responded, "Well, I think she was not – she was not in her right mind, that was for sure.  So, yes, I agree with all that.  She was not in touch with reality."  Dr. Brabson acknowledged that he was not a psychologist or psychiatrist.  The trial court noted Defendant "was served with the arrest warrants in this case on September 21st, 2017," and Dr. Brabson confirmed that was the day she came to see him.  The presentence report reflects that warrants were issued September 19, 2017, and Defendant's trial briefs indicate she turned herself in on September 21, 2017.

The prosecutor read Ms. Swift's victim impact statement into the record, noting that she was unable to be present.  The other individuals who had submitted victim impact statements made oral statements addressing the court.  Mr. Swift elaborated on the effect Defendant's crimes had on his family.  He noted that he was a teacher and that Defendant's students and their parents were following the case.  Mr. Porter's statement reiterated his written victim impact statement.  Ms. Porter elaborated on the circumstances which led her to show Defendant her husband's credit card, on her feeling that Defendant had suffered no consequences, and on her sense of betrayal.  She implied that Dr. Brabson's testimony was biased. Defendant's mother-in-law essentially read the narrative she had submitted with her written victim impact statement, elaborating on a

few details. Ms. Nuchols also elaborated on her statement, noting that even when she was informed of the unauthorized charges, she never suspected Defendant. She confided in Defendant regarding the crime, and Defendant minimized the impact it would have on Ms. Nuchols. Ms. Nuchols noted the effect the crime had had on Defendant's former students, who were worried about their personal information. She reiterated that Defendant was not remorseful and that Defendant had denied she committed the crime, asserting that her husband was framing her. Ms. Hipshire also expanded on the circumstances of the offense, noting that Defendant had mentioned she stopped by Ms. Hipshire's classroom to get lotion, but Ms. Hipshire remarked at the time that Defendant did not smell of lotion. When later confronted, Defendant denied responsibility. She also elaborated on Defendant's spending the money on luxury items. She stated that school parents were afraid that their children's personal information had been compromised and that Defendant does not have the job she purports to have.

After the victims had made statements to the court, the State observed that, as part of the plea agreement, it was not advocating any position at the sentencing hearing. The defense argued that Defendant had accepted responsibility by pleading guilty and waiving her preliminary hearing, that she had refrained from apologizing only on her attorney's advice, that she had paid restitution with the assistance of her family, that allegations that she was not employed by the school system or that she had misused student information were unfounded, that her mental health issues contributed to the offenses, and that diversion was an appropriate resolution.

The trial court found that Defendant committed multiple crimes and that the offenses constituted a pattern of behavior. The court noted that the victims had all trusted Defendant and were devastated by her acts. The trial judge stated, "[M]y firm belief is that if you're given the opportunity, you're going to do this again." The court then sentenced Defendant to spend forty-eight hours in jail and the remainder of the agreed-upon sentence on supervised probation. As to denying diversion, the only observation made by the trial court was, "You don't need to be teaching our kids." Defendant asserts on appeal that the trial court erred by denying judicial diversion and in the alternative, full probation.

*Analysis*

**I. Victim Impact Statements**

Defendant, in her appellate brief, references the "multiple unsworn victim impact statements" and further unsworn allegations made by the victims in their statements to the court. In her reply brief, Defendant clarifies that she "does not raise issue with the admissibility of the unsworn, written statements, nor does she raise any Confrontation

Clause challenge." She further states that she does not object to any statements regarding the personal impact of the crimes or statements advocating a desired sentencing result. Rather, she argues for the first time on appeal that the written victim impact statements and the oral statements made to the court cannot be relied upon in the sentencing decision because they are not relevant and reliable. At oral argument, defense counsel asserted that these statements were "not evidence" and had an improper impact on the trial court's decision.

Defendant contests various victim statements and challenges the State's conclusion that she used the proceeds of her crimes for luxury goods and services. She characterizes the "insinuation" that she could have obtained sensitive personal information regarding her students as "a smear." Defendant cites to *State v. Ring* for the proposition that the trial court, in imposing the sentence, must only consider evidence from the victim impact statements that is reliable and is relevant to sentencing considerations. *See State v. Ring*, 56 S.W.3d 577, 583 (Tenn. Crim. App. 2001). We observe that some of the evidence to which Defendant objects was relevant to the circumstances of the offense, in that it showed she used stolen funds for nonessential purchases. *See* T.C.A. § 40-35-113(7) (listing as a mitigating factor that "[t]he defendant was motivated by a desire to provide necessities for the defendant's family or the defendant's self"); *Ring*, 56 S.W.3d at 584 ("The trial court should then further consider the existence of enhancing and mitigating factors and the nature and circumstances surrounding the offense in fashioning an appropriate sentence alternative."). Any statements made by Defendant's fellow teachers that if she continued to teach, she would have access to her students' personal information is relevant to the best interests of the public, a factor the trial court was required to consider in its decision regarding diversion. *See State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). The record does not indicate which portions of the victim impact statements the trial court considered in imposing judgment, but the portions of the statements that are determined to be relevant and reliable may properly be considered in sentencing. *See* T.C.A. §§ 40-38-103(a)(2), -202; *Ring*, 56 S.W.3d at 583.

Insofar as Defendant at oral argument challenged the consideration of the victims' statements at all, we observe that a sentencing court is permitted to consider "reliable hearsay" so long as "the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted." T.C.A. § 40-35-209(b); *see State v. Bonds*, 502 S.W.3d 118, 150 (Tenn. Crim. App. 2016) ("This Court has repeatedly recognized that the Confrontation Clause is not applicable to sentencing hearings."). Defense counsel agreed at oral argument that Defendant had been provided the written statements prior to the hearing and stated that Defendant did not take issue with the timeliness of the written statements. *See* T.C.A. § 40-35-208 (the time period for filing victim impact statements is subject to waiver); *State v. Whited*, 506 S.W.3d 416, 449 (Tenn. 2016) (the defendant

was not entitled to relief from the State's failure to timely provide victim impact statements when he did not request a continuance or object to their admission); *State v. Moss*, 13 S.W.3d 374, 387 (Tenn. Crim. App. 1999). The oral statements largely reflected the written statements already in evidence. *See Whited*, 506 S.W.3d at 449 (when the defendant was not permitted to cross-examine witnesses at sentencing, the court of criminal appeals did not err in denying relief on multiple grounds, including that the live statements were primarily a recitation of the written victim impact statements); *State v. Thomas William Whited*, No. E201-302523-CCA-R3-CD, 2015 WL 2097843, at *11 (Tenn. Crim. App. May 4, 2015), *rev'd on other grounds by Whited*, 506 S.W.3d at 419.

Defendant did not object to the victims' addressing the court at the hearing, and defense counsel acknowledged that he did not object because he did "not feel like it was [his] place to help the State put on its proof." Withholding an objection in order to deny the other party a chance to cure a defect amounts to waiver. *See* Tenn. R. App. P. 36(a); *State v. Arlene Patrice Green*, No. 01C01-9303-CC-00084, 1994 WL 151332, at *3 (Tenn. Crim. App. Apr. 28, 1994). Furthermore, "[a] party may consent to the admissibility of evidence which is otherwise prohibited by the Rules, so long as the proceedings are not rendered so fundamentally unfair as to violate due process of law." *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000). When a party fails to object to inadmissible evidence, such evidence may be considered for any probative effect it may have. *Id.* In *State v. Michael Lynn Poston*, a witness was not sworn in until after having given testimony, and this court concluded that the defendant's failure to object waived any challenge on appeal. *State v. Michael Lynn Poston*, No. M2012-02321-CCA-R3-CD, 2014 WL 309648, at *11 (Tenn. Crim. App. Jan. 28, 2014) ("Because he failed to lodge a contemporaneous objection, and because, as previously noted, the failure to swear a witness has not been deemed an error of constitutional dimension, the defendant has waived our consideration of the propriety of the admission of the victim's testimony."). We conclude that Defendant has waived any objection to the evidence introduced at sentencing. On remand, the trial court may properly consider information it deems relevant and reliable within the witness statements because any objection to their admission has been waived.

## II. Denial of Judicial Diversion and Full Probation

The parties agree that the trial court failed to conduct the proper analysis in denying diversion. They likewise are in accord in urging us to conduct a de novo review of the evidence, although they disagree as to the appropriate resolution of the issue. Defendant furthermore asserts that the trial court failed to engage in the proper analysis in denying full probation, and the State responds that the trial court acted within its discretion by imposing forty-eight hours of confinement. Because the record does not

reflect that the trial court conducted the proper analysis in imposing the sentences, we reverse the trial court's judgments and remand for the trial court to make appropriate factual findings and to make sentencing determinations which reflect the trial court's consideration of the appropriate statutory and common law sentencing principles.

Generally, a trial court's sentencing determinations are reviewed for abuse of discretion, and this court applies a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The burden of establishing that the sentence was improper rests with the party challenging the sentence on appeal. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. In imposing a sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210(b).

When a qualified defendant is either found guilty or pleads guilty, a trial court has the discretion to defer further proceedings and place that defendant on probation without entering a judgment of guilt. T.C.A. § 40-35-313(a)(1)(A). Eligibility for judicial diversion does not entitle the defendant to judicial diversion as a matter of right. *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). Rather, the statute states that a trial court "may" grant judicial diversion in appropriate cases. *See* T.C.A. § 40-35-313(a)(1)(A).

When making a determination regarding judicial diversion, the trial court must consider the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's mental and physical health, (6) the deterrent effect of the sentencing decision to both the defendant and other similarly situated defendants, and (7) whether judicial diversion will serve the interests of the public as well as the defendant. *Electroplating, Inc.*, 990 S.W.2d at 229 (citing *Parker*, 932 S.W.2d at 958). The record must reflect that the trial court considered and weighed all these factors in arriving at its decision. *Electroplating, Inc.*, 990 S.W.2d at 229.

"[T]he abuse of discretion standard accompanied by a presumption of reasonableness applies to all sentencing decisions, including the grant or denial of judicial diversion, when the trial court properly supports its decision on the record in accordance with the purposes and principles of sentencing." *State v. King*, 432 S.W.3d 316, 329 (Tenn. 2014). To determine if there has been an abuse of discretion, this court examines "whether there is 'any substantial evidence' to support the decision of the trial court." *Id.* at 326.

The trial court is not required to "recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness," but "the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it." *Id.* at 327. Once the trial court has considered all the factors and identified the applicable factors, it "may proceed to solely address the relevant factors." *Id.* "Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record." *Id.* at 326. If the trial court fails to consider and weigh the factors, the deferential standard of review does not apply. *Id.* at 327. "In those instances, the appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration." *Id.* at 328. The decision to conduct a de novo review or to remand to the trial court lies with in this court's discretion. *Id.*

This court likewise reviews a decision regarding alternative sentencing under an abuse of discretion standard, accompanied by a presumption of reasonableness, when the sentence falls within the appropriate range and reflects that the decision was based on the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (per curiam). In determining whether to order confinement, the court should consider that:

> (1) Sentences involving confinement should be based on the following considerations:
>> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;

(2) The sentence imposed should be no greater than that deserved for the offense committed;

(3) Inequalities in sentences that are unrelated to a purpose of this chapter should be avoided;

(4) The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed;

(5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. The length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence;

(6) Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation, community service or all of these; and

(7) Available community-based alternatives to confinement and the benefits that imposing such alternatives may provide to the community should be considered when the offense is nonviolent and the defendant is the primary caregiver of a dependent child.

T.C.A. § 40-35-103. In evaluating the suitability of probation, the trial court should also consider the same factors applicable to diversion: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017).

The defendant bears the burden of establishing suitability for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). The trial court must also place into the record any enhancement or mitigating factors "as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." T.C.A. § 40-35-210(e); *see* T.C.A. § 40-35-210(b)(5). "Despite the wide discretion afforded to trial courts in sentencing decisions, the trial court has an affirmative duty to state on the record, either orally or in writing, its findings of fact and reasons for imposing a specific sentence on the record to facilitate appellate review." *State v. Tammy Marie Harbison*, No. M2015-01059-CCA-R3-CD, 2016 WL 613907, at *4 (Tenn. Crim. App. Feb. 12, 2016). While a trial court is not required to use "magic words," "it is … critical that, in their process of imposing

sentence[s], trial judges articulate fully and coherently the various aspects of their decision as required by our statutes and case law." *Trent*, 533 S.W.3d at 292. Unless the trial court has articulated the reasons for the sentencing determination, the abuse of discretion standard of review does not apply. *Id.*

Here, the trial court made rather meager factual findings, and there is nothing to indicate it considered or weighed the factors required by *Parker* and *Electroplating*. The trial court found that Defendant's actions constituted a pattern of behavior rather than an aberration and that she was likely to reoffend if given the opportunity, findings which are relevant to her rehabilitation and amenability to correction. Regarding the circumstances of the offenses, the trial court noted the emotional impact of the crimes on the victims. The trial court found that Defendant should not be eligible to teach. The trial court did not address or refer to any of the other *Parker* or *Electroplating* factors. Neither did it indicate what sort of weight it assigned to any of the factors, as required by *King*. *King*, 432 S.W.3d at 326. Regarding the decision to impose confinement, the trial court did not indicate whether it examined the statutory considerations for imposing confinement and did not place in the record its reasons for imposing the sentence. *See* T.C.A. §§ 40-35-103(1)(A)-(C), -103(5), -210(e); *see Sihapanya*, 516 S.W.3d at 476 (holding that when a trial court denies probation solely on the need for deterrence or solely on the need to avoid depreciating the seriousness of the offense, a heightened standard of review applies). The record contains few factual findings, despite the fact that the trial court was presented with the testimony of Dr. Brabson and the live statements of the victims. The trial court likewise made only minimal credibility determinations based on the witness statements which were offered by the State without objection from the defense and which accordingly could be considered for whatever probative value they possessed. *See Smith*, 24 S.W.3d at 279. We conclude that the failure to make these findings or to explicitly engage in the appropriate analysis renders this case more appropriate for remand. *See Trent*, 533 S.W.3d at 295 (concluding that when the trial court did not make adequate factual findings or credibility determinations and did not "adequately comply with the many and various prerequisites that must be satisfied before imposing a sentence," remand was appropriate despite the possibility of gleaning additional bases for the denial of probation from the record).

Accordingly, we reverse the trial court's judgments and remand the case. On remand, we direct the trial court to make factual findings as relevant to the proper sentencing considerations, including specific credibility determinations. The trial court should determine the appropriate sentence after engaging in the analysis outlined above and after considering the purposes and principles of sentencing in imposing its judgment. When the trial court has made its sentencing determinations regarding judicial diversion and confinement, either party may appeal.

We note that the plea agreement stated that the sentence for the misdemeanor theft was "11 mo., 29 days, all suspended at 0%." The prosecutor likewise stated at the plea hearing, "The agreed sentence in count six is 11 months and 29 days all suspended at a zero percent service rate on unsupervised probation." The trial court, however, told Defendant that the court would determine in a separate hearing the manner of service of the two-year sentences, "as well as the 11/29 in count six." At the sentencing hearing, the trial court did not assign a sentence for the misdemeanor theft. The judgment form, however, indicates that the trial court sentenced Defendant to serve forty-eight hours in confinement for the misdemeanor theft and the remainder of the sentence on supervised probation. On remand, the trial court should impose a sentence in conformity with the plea agreement on this count.

## CONCLUSION

Based on the foregoing, we reverse the sentences and remand the case for new sentencing determinations. On remand, the trial court is directed to make appropriate factual findings and credibility determinations. The trial court is directed to conduct an appropriate analysis regarding judicial diversion and regarding the manner of service of the sentence, indicating on the record its compliance with the consideration of the statutory and common law criteria of sentencing. The trial court shall then make its sentencing determinations based upon its factual findings and the appropriate sentencing considerations.

_____

THOMAS T. WOODALL, JUDGE